J-S18010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROGER ALLEN MCCONNELL II | |
| Appellant | No. 1825 EDA 2016 |

Appeal from the Judgment of Sentence March 1, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001121-2015

BEFORE:  PANELLA, J., SOLANO, J., and FITZGERALD, J. [*]

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 18, 2017**

Appellant, Roger Allen McConnell II, appeals from the judgment of sentence entered March 1, 2016, in the Monroe County Court of Common Pleas. Appellant contests the court's denial of his motion to suppress the results of his blood alcohol content ("BAC") test, and challenges the constitutionality of 75 Pa.C.S.A. § 1543(b)(2). We affirm.

The relevant facts and procedural history of this case are as follows. Pennsylvania State Police Trooper Wood was responding to the reported theft of an all-terrain vehicle ("ATV") when he was notified that the complainant had stopped the alleged thief on a nearby road. When Trooper Wood arrived, Appellant was standing next to an ATV in the roadway. The

_____

[*] Retired Justice assigned to the Superior Court.

complainant was in a truck parked behind Appellant's ATV, and two other state troopers were also present.

The trooper asked Appellant for identification, and inquired about what had occurred. Appellant replied that he and his son had taken an ATV from the complainant's residence as collateral for money the complainant owed Appellant's son. However, Trooper Wood determined that the ATV on the roadway actually belonged to Appellant, and not the complainant. The trooper smelled a moderate odor of alcohol emanating from Appellant, and indicated Appellant slurred his speech and appeared to be stumbling. Trooper Wood asked Appellant if he had been drinking, and Appellant replied he consumed beer that day. Appellant also stated he had been operating the ATV on the roadway.

Trooper Wood then administered the Horizontal Gaze Nystagmus test, a field sobriety test. Based on the above observations, Trooper Wood placed Appellant under arrest on suspicion of DUI. Appellant thereafter had his blood drawn, and the lab results indicated Appellant had a BAC of 0.140.

Procedurally, the Commonwealth charged Appellant with driving under the influence, a misdemeanor, and related summary offenses. Appellant filed an omnibus pretrial motion, seeking to suppress the results of the BAC test. After argument, the court denied the motion. Appellant proceeded to a bifurcated trial. The jury found Appellant not guilty of DUI, while the court convicted Appellant of the following offenses: driving with BAC .02 or greater while operating privilege is suspended or revoked; driving while license

suspended; driving an unregistered vehicle; operation of a motor vehicle without required financial responsibility; operating an ATV on streets and highways; failure to register ATV; no registration plate; operation of an ATV while under the influence of alcohol; and no ATV liability insurance.[1]. The court sentenced Appellant to 90 days' incarceration and a fine.[2] Appellant timely filed post-sentence motions, which the court denied. This timely appeal followed.[3]

Appellant raises two issues for our review:[4]

WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW IN FINDING THAT SECTION 1543(b)(2) OF THE VEHICLE CODE DOES NOT VIOLATE DUE PROCESS?

_____

[1] 75 Pa.C.S.A. §§ 1543(b)(1.1)(i); 1543(b)(1);1301(a); 1786(f); 7721(a); 7711.1(a)(1); 7711.1(a)(2); 7726(a)(3); 7730(a), respectively.

[2] Appellant's unfortunate penchant for drinking and driving his ATV triggered additional legal difficulties for him in the case of **Commonwealth v. McConnell**, No. 163 EDA 2016 (Pa. Super., filed January 25, 2017) (unpublished memorandum) (Panella, J.).

[3] We note with extreme displeasure that Assistant District Attorney Curtis J. Rogers requested and was granted an extension, but failed to file a brief on the Commonwealth's behalf.

 "An appellee is required to file a brief that at minimum must contain 'a summary of argument and the complete argument for appellee.'" **Commonwealth v. Pappas**, 845 A.2d 829, 835 (Pa. Super. 2004) (quoting Pa.R.A.P. 2112). In **Pappas**, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." **Id**. We echo that opinion. And we remind Attorney Rogers of his obligation to file an appellee's brief on the Commonwealth's behalf in future appeals.

[4] We have reordered Appellant's issues for ease of disposition.

WHETHER, PRIOR TO TRIAL, THE TRIAL COURT COMMITTED AN ERROR OF LAW WHEN IT DENIED [] APPELLANT'S MOTION TO SUPPRESS?

Appellant's Brief, at 9.

In Appellant's first question for our review, he argues that § 1543(b)(2) of the Vehicle Code is unconstitutional. Appellant contends he preserved this issue by raising it at trial in an unrelated case (his other ATV case, *see* footnote two, *supra*) and in the direct appeal from that conviction. We disagree.

Appellant's failure to raise this issue before the trial court in this specific case precludes our review. *See* Pa.R.A.P. 302(a). Moreover, even if Appellant had properly preserved this issue, we previously found it to be without merit. *See Commonwealth v. McConnell*, No. 163 EDA 2016, at 6-9 (Pa. Super., filed January 25, 2017) (unpublished memorandum).

In his second issue, Appellant argues Trooper Wood's investigative detention took place prior to Appellant's alleged statement that he drove on the roadway, meaning the detention occurred before the trooper had reasonable suspicion to stop him. Appellant repeatedly insists his proximity to the ATV does not prove he actually operated it, and that without such proof, the Commonwealth's case is untenable. He contends Trooper Wood also lacked probable cause to arrest Appellant, because the trooper failed to describe the extent of Appellant's stumbling or slurred speech.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence that

the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. 2012) (citations omitted).

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citation omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

We begin with Appellant's assertion that the trooper lacked reasonable suspicion for the investigative detention. The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. **See Commonwealth v. Carter**, 105 A.3d 765, 768 (Pa. Super. 2014) (*en banc*), *appeal denied*, 117 A.3d 295 (Pa. 2015). "To secure the right of

citizens to be free from ... [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000) (citation omitted). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. *See Commonwealth v. Fuller*, 940 A.2d 476, 478 (Pa. Super. 2007).

"[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Reppert*, 814 A.2d 1196, 1204 (Pa. Super. 2002) (*en banc*) (citation omitted). "Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id*. (internal quotation marks and citation omitted; brackets in original).

Instantly, Trooper Wood testified that he received a dispatch directing him to report to a nearby road, where the complainant of a theft claimed to

have stopped the thief. **See** N.T. Suppression Hearing, 11/23/15, at 7-8. When the trooper arrived, Appellant admitted to taking an ATV from the complainant as collateral for a debt owed. **See id**., at 11. Despite the later discovery that Appellant was the owner of the ATV at the scene, Trooper Wood had reasonable suspicion to believe criminal activity was afoot and that Appellant was a participant in that activity. **See Reppert**, 814 A.2d at 1204. Though Appellant ultimately was not charged with theft following this encounter, that does not invalidate the trooper's reasonable suspicion for conducting the investigatory detention. Thus, Appellant's contention that Trooper Wood lacked the reasonable suspicion necessary to conduct a brief investigatory detention is without merit.

We next address Appellant's claim that the trooper lacked probable cause to arrest. "Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." **Commonwealth v. Hilliar**, 943 A.2d 984, 994 (Pa. Super. 2008).

> [W]e have held that one "drives" a vehicle when the Commonwealth proves that the car was in motion at the time in question. The Commonwealth need not produce direct evidence of driving, such as testimony that a defendant was seen driving, but may instead rely on circumstantial evidence creating the inference that the vehicle had been in motion in order to meet its evidentiary burden.

*Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 674 (Pa. Super. 2002) (citations omitted).

As for probable cause to arrest, the trooper smelled a moderate odor of alcohol emanating from Appellant. *See* N.T. Suppression Hearing, 11/23/15, at 11. Trooper Wood noted Appellant's slurred speech and stumbling. *See id*. When asked if he had been drinking, Appellant admitted to drinking beer that day, but refused to state how much beer he had consumed. *See id*., at 12. Appellant also admitted he drove the ATV on the roadway prior to Trooper Wood's arrival. *See id*. Trooper Wood administered a field sobriety test, and Appellant showed signs of intoxication. *See id*. Trooper Wood then decided to arrest Appellant on suspicion of DUI.

Based on the above testimony, we find Trooper Wood had probable cause to arrest Appellant. *See Hilliar*, 943 A.2d 984, 994; *Costa-Hernandez*, 802 A.2d at 674. Accordingly, we find the suppression court properly denied Appellant's motion to suppress for lack of probable cause. *See Eichinger*, 915 A.2d at 1134.

Appellant next protests the warrantless blood draw as having violated his constitutional rights. Specifically, he argues that his consent to the blood draw was invalid, relying on *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), a case decided approximately five months prior to the filing of his opening brief in this case.

As it pertains to this case, the *Birchfield* Court found that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S.Ct. at 2186. In so finding, the Court vacated the conviction of one of the petitioners who had consented to a blood draw after being informed by police that he must comply with the blood test, or else face criminal penalties.

Though refusal to submit to a blood draw is not a separate crime in Pennsylvania, at the time of this incident involving Appellant, refusal to submit to a blood draw, paired with a later conviction for or plea to drunk driving under any section of 75 Pa.C.S.A. § 3802, mandated higher penalties for the defendant. *See* 75 Pa.C.S.A. § 3804. Penalties.

This Court recently interpreted *Birchfield* as applied to Pennsylvania's drunk driving laws in the case of *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016). In that case, the arresting officer warned Evans, who was suspected of driving under the influence, that he would face higher penalties for refusing a blood draw. Evans thereafter consented to a blood draw, and was charged with driving under the influence. Evans later challenged that consent as involuntary, and filed a motion to suppress. His motion was denied, and he appealed his drunk driving conviction to this Court.

Based on the *Birchfield* decision, the *Evans* panel vacated the judgment of sentence and the suppression court's order, and remanded the case to the trial court for reevaluation of Evans's consent, given the

inaccuracy of the officer's warning after **Birchfield** invalidated that law imposing higher penalties for refusing a blood draw. **See Evans**, 153 A.3d at 331.

As noted, the Court decided **Birchfield** after the sentencing in this case, but during the pendency of this appeal. And the decision announced a new criminal rule. Where a United States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." **Schriro v. Summerlin**, 542 U.S. 348, 351 (2004). "Case law is clear, however, that in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at 'all stages of adjudication up to and including the direct appeal.'" **Commonwealth v. Tilley**, 780 A.2d 649, 652 (Pa. 2001) (quoting **Commonwealth v. Cabeza**, 469 A.2d 146, 148 (Pa. 1983)). "[A]n exception to the issue-preservation requirement exists where the challenge is one implicating the legality of the appellant's sentence." **Commonwealth v. Barnes**, 151 A.3d 121, 124 (Pa. 2016) (citation omitted).

Here, Appellant does not challenge the legality of his sentence; indeed, as he consented to the blood draw he was not subject to the higher sentencing penalty for refusal. **See** 75 Pa.C.S.A. § 3804. And, fatal to his claim, Appellant did not challenge consent in the lower court; he does so

only on direct appeal.[5] Appellant's failure to raise the issue of his consent to the warrantless blood draw at any time prior to his opening brief in this appeal precludes our review of the claim.[6] **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Barnes**, 151 A.3d at 124; **Tilley**, 780 A.2d at 652.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2017

_____

[5] The record reveals only that Appellant "acknowledged his Implied Consent and O'Connell Warnings." Affidavit of Probable Cause, filed 3/23/15, at 1. Perhaps understandably, given the suppression hearing preceded **Birchfield**, neither party elicited testimony about the circumstances of consent or the phrasing of Trooper Wood's warnings during any stage of the proceedings.

[6] In **Evans**, "[w]ithin the suppression motion, [a]ppellant claimed that the police coerced his consent by 'inform[ing him] that if he [did] not submit to extraction and subsequent testing of his blood, he [would] face[ ] stiffer criminal penalties.'" 153 A.3d at 324 (quoting [a]ppellant's Motion to Suppress, 1/9/14, at 3).